UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DEBRA MAYS JACKSON                                          PLAINTIFF

V.                                  CIVIL ACTION NO. 3:23-CV-3095-KHJ-MTP

TOM DUFF, et al.                                           DEFENDANTS

ORDER

Before the Court are Defendants' [35 and 37] Motions to Dismiss and the

Mississippi Board of Trustees of State Institutions of Higher Learning's ("IHL") [7]

Motion to Dismiss in a second action filed against it alone. Motion to Dismiss,

*Jackson v. Bd. of Trs. of Insts. of Higher Learning* (*Jackson II*), No. 3:24-CV-308

(S.D. Miss. July 19, 2024), ECF No. 7 [hereinafter *Jackson II* Mot. Dismiss].[1] The

Court grants in part and denies in part the [35] Motion, grants the [37] Motion, and

grants the IHL's [7] Motion to Dismiss in *Jackson II*.

I.    Background

This matter stems from an employment dispute.

Plaintiff Debra Mays Jackson served as Jackson State University's ("JSU")

Vice President and Chief of Staff for about three years under JSU's 11th President,

William Bynum. Complaint ¶¶ 9, 19, *Jackson II*, No. 3:24-CV-308, ECF No. 1

[hereinafter, *Jackson II* Compl.]. At times, Mays Jackson would serve as "Bynum's

---

[1] On September 19, 2024, an [57] Order Consolidating Cases was entered, consolidating *Jackson v. Duff* (*Jackson I*), No. 3:23-CV-3095 (S.D. Miss. filed Nov. 16, 2023), with *Jackson II*, No. 3:24-CV-308 (S.D. Miss. filed May 28, 2024).

proxy," and in his absence she "represented JSU at university events and meetings and at IHL board meetings." Third Am. Compl. [31] ¶ 25.

After being arrested on drug and prostitution charges, Bynum stepped down in February 2020. *Id.* ¶ 34; *Jackson II* Compl., *supra*, ¶ 19. The IHL's Board of Trustees then selected Thomas Hudson, who had served under Mays Jackson's supervision as a "Special Assistant" to Bynum, to serve as JSU's Interim President.[2] *Jackson II* Compl., *supra*, ¶¶ 19–20. Mays Jackson claims the board members "knew or should have known that [she] was interested in serving as interim president given [she] regularly ran JSU in Bynum's absence." *Id.* ¶ 20.[3] Shortly after his appointment, Hudson told Mays Jackson that "he was not qualified or prepared to serve as Interim President," and he offered her a $25,000 raise in salary to continue serving as his Vice President and Chief of Staff. [31] ¶ 36. Days later, IHL Commissioner Rankins announced that a "national search would be conducted to determine who would serve as JSU's 12[th] President." *Jackson II* Compl., *supra*, ¶ 22. Eight months later, the IHL "hosted a ZOOM call . . . to receive input from [its] constituents about the characteristics and qualifications they wanted JSU's

---

[2] "The IHL is an agency established by the State of Mississippi to govern Mississippi's eight public universities." [31] ¶ 22. The IHL is vested with the power to hire each public university's president. *Id.* ¶ 23.

[3] At the time of Bynum's resignation in 2020, Steven Cunningham, Tom Duff, Ford Dye, Shane Hooper, Ann H. Lamar, Jeanne Carter Luckey, Bruce Martin, Alfred E. McNair, Jr., Chip Morgan, Gee Ogletree, Hal Parker, and J. Walt Starr (collectively, "the 2020 IHL board members") were members of the IHL's Board of Trustees. *Jackson II* Compl., *supra*, ¶¶ 8, 20. The IHL's Commissioner of the Board was Alfred Rankins, and his deputy was Marcus Thompson. *Id.* ¶ 20; [31] ¶ 18. These individuals, except for Ann H. Lamar and Thompson, are named Defendants here. *See* [31] ¶¶ 4–14, 18–19.

12[th] President to possess." *Id.* ¶ 25. Mays Jackson submits that Hudson, Rankins, and Thompson "handpicked JSU employees and Hudson['s] supporters to [participate and] urge IHL board members to forego a national search and to name Hudson as JSU's 12[th] President." *Id.* And on November 19, 2020, all of the 2020 IHL board members, except Duff, voted to hire Hudson as JSU's 12th President. *Id.* ¶ 26.

On February 10, 2021, Mays Jackson filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") where she alleged the IHL "discriminated against her on account of her sex when its policymakers[, the IHL board members who voted for Hudson,] rubberstamped Commissioner Rankins' recommendation to hire Hudson as President even though Mays Jackson was clearly more qualified . . . for the President's job." *Id.* ¶ 27. In response, on April 27, 2021, the IHL "flatly rejected the notion that [she] was more qualified than Hudson." *Id.* ¶ 28 (cleaned up). According to Mays Jackson, the IHL simply "touted" and "boasted" about Hudson's gained work experience and accomplishments while serving as Interim President. *Id.*

In March 2023, Hudson was "placed on administrative leave." *Id.* ¶ 30. Mays Jackson claims that sometime after Hudson was named JSU's Interim President, he sent an unwelcomed and uninvited photograph of his genitalia to a female JSU employee. *Id.* ¶ 24. Rankins then allowed Thompson to investigate the complaint against Hudson, even though Thompson and Hudson were close friends. *Id.* Ultimately, Thompson failed to interview the female employee during his

investigation, and no one recommended that the IHL discipline Hudson. *Id.* Mays Jackson adds that Hudson sent additional unsolicited photographs of his genitalia to another female employee and a female student, and he later demoted a male employee for speaking out against his conduct. *Id.*

After Hudson was placed on administrative leave, Steven Cunningham, an IHL board member, "was appointed to chair the Board Search Committee for the search for JSU's 13[th] President." *Id.* ¶ 30. The committee included then-IHL board members Ormella Cummings, Bruce Martin, Gee Ogletree, and Hal Parker. *Id.* Later that year, the IHL "hired Academic Search to conduct a national search for JSU's 13[th] President." *Id.* ¶ 32.[4]

Mays Jackson was one of seventy-nine applicants, yet she was denied an interview by the JSU Search Committee. *Id.* ¶ 33.[5] She emphasizes that the committee members "knew about [her] 2021 EEOC Complaint . . . as they were IHL board members when [she] filed the Complaint and IHL hired counsel to respond to the discrimination allegations." *Id.* And although Thompson was not one of the seventy-nine applicants, the IHL Board named him as JSU's 13th President in November 2023. *Id.* ¶ 34. Mays Jackson claims she was "clearly more qualified than

---

[4] Mays Jackson includes that the only females ever chosen to represent IHL's historically black colleges and universities ("HBCUs") as Presidents "were named after national searches were conducted." [31] ¶ 52 (referring to JSU, Alcorn State University, and Mississippi Valley State University).

[5] Committee members Steven Cunningham, Ormella Cummings, Bruce Martin, Gee Ogletree, and Hal Parker "denied . . . Mays Jackson an interview for the job." *Id.* ¶ 33.

[him], a male, to serve [as] President of JSU." *Id.*; *see also* [31] ¶¶ 54–55; [31] ¶¶ 24–33, 50 (comparing Thompson's previous work experience with Mays Jackson's).[6]

> Simply put, Mays Jackson argues:

> On November 19, 2020 [IHL board members] passed over [her] for President and selected Hudson, even though he was clearly less qualified than Mays Jackson. . . .
> [And o]n November 16, 2023, [IHL board members] also voted to name . . . Thompson as President when Mays Jackson was clearly more qualified for the President's position . . . .

[31] ¶¶ 54–55.

Mays Jackson brought suit on November 16, 2023, against the IHL and its individually named board members, in their individual and official capacities, alleging violations of the Equal Protection Clause, Title VII, and the First Amendment. Compl. [1]; [31] ¶¶ 56–72. Mays Jackson brought suit again on May 28, 2024, against the IHL alleging violations of Title VII. Defendants now move the Court to dismiss. The IHL moves the Court to dismiss in the interest of judicial efficiency in line with the first-to-file doctrine. The individually named defendants in their individual capacities move the Court to dismiss primarily on qualified-immunity grounds. *See generally* [35]. And Defendant IHL and the individually named defendants in their official capacities move the Court to dismiss primarily on sovereign-immunity grounds. *See generally* [37]. Addressing each motion in turn, the Court grants in part and denies in part the [35] Motion, grants the [37] Motion, and grants the IHL's [7] Motion to Dismiss in *Jackson II*.

---

[6] According to Mays Jackson, this isn't the first time the national search was abandoned to hire a male. *See* [31] ¶ 53.

II.    Standard

Motions to dismiss in federal court can be made under various grounds, and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are two of the most common.

A.  Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction. So "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A motion to dismiss for lack of subject-matter jurisdiction should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim that would entitle [her] to relief." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

"Subject-matter jurisdiction may be addressed by considering: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Hopkins v. Wayside Schs.*, No. 23-50600, 2024 WL 3738478, at *4 (5th Cir. Aug. 9, 2024) (per curiam) (unpublished) (cleaned up). And the "burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. . . . [T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (cleaned up). A court without subject-matter jurisdiction may not reach the merits and must dismiss the case without

prejudice under Rule 12(b)(1). *Spivey v. Chitimacha Tribe*, 79 F.4th 444, 448–49 (5th Cir. 2023).

B.  Rule 12(b)(6)

In contrast, a motion to dismiss under Rule 12(b)(6) asserts that the plaintiff has failed to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Such motions require the Court to accept all well-pleaded facts as true and to view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A plaintiff's complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. These "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (cleaned up). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

C.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (cleaned up). This immunity applies when the defendant's conduct "does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (cleaned up). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (cleaned up).

When qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Mackey v. Pigott*, No. 3:23-CV-233, 2023 WL 7663300, at *6 (S.D. Miss. Nov. 14, 2023) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under [Section] 1983, and would overcome their qualified immunity defense." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (cleaned up). And a "good-faith assertion of qualified immunity" shifts the burden of proof to the plaintiff "to show that the defense is not available." *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (cleaned up).

## III. Analysis

Under the operative [31] Third Amended Complaint, Mays Jackson brings four causes of action: (1) a Section 1983 Equal Protection sex discrimination claim against all defendants; (2) a Title VII sex discrimination claim against the IHL,[7] (3)

---

[7] The IHL concedes to the survival of the Title VII sex discrimination claim against it. [37] ¶ 2.

Title VII retaliation claim against the individually named defendants,[8] and (4) a First Amendment retaliation claim against the individually named defendants.[9]

A. [37] Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by the IHL and the Individually Named Defendants in Their Official Capacities

Because a motion to dismiss under Rule 12(b)(1) must be addressed first, *see Ramming*, 281 F.3d at 161, the Court begins here. Absent an applicable exception, the IHL and the individually named defendants, within their official capacities, are immune from Mays Jackson's claims.

"Because Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state, a defendant's motion to dismiss asserting Eleventh Amendment sovereign immunity is properly brought under Rule 12(b)(1)." *Hopkins*, 2024 WL 3738478, at *4. The Eleventh Amendment reinforces the constitutional principle that "states, as separate sovereigns, are inherently immune from suit without their consent." *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir. 2023).

---

[8] Mays Jackson asserts a Title VII retaliation claim against the IHL in *Jackson II*, which is addressed below.

[9] The [31] Third Amended Complaint names Ormella Cummings, Teresa Hubbard, and Gregg Rader as defendants, but Mays Jackson has failed to properly add these individuals as defendants. With ample time and opportunity, Mays Jackson has not had summonses issued, attempted service, or requested a waiver of service in regard to these three. The deadline to do so was September 12, 2024. *See* [47] at 4–5; Fed. R. Civ. P. 4(m). As a result, the Court dismisses all claims against Cummings, Hubbard, and Rader without prejudice for failure to service process. Fed. R. Civ. P. 4(m), 12(b)(5); [35] at 2 n.3. There are also allegations throughout the briefings against Ann H. Lamar. Having not been named as a defendant or properly served either, Lamar is dismissed too.

This immunity "extends to so-called arms of the state, entities which are effectively the state itself because the state is the real, substantial party in interest to the lawsuit." *Hopkins*, 2024 WL 3738478, at *4 (cleaned up). The IHL is "considered an arm of the state for Eleventh Amendment purposes." *Thomas v. Univ. of Miss.*, No. 3:18-CV-62, 2018 WL 6613807, at *2 (N.D. Miss. Dec. 17, 2018) (first citing *Jagnadan v. Giles*, 538 F.2d 1166, 1174 (5th Cir. 1976); and then citing *Kermode v. Univ. of Miss. Med. Ctr.*, 496 F. App'x 483, 488 (5th Cir. 2012) (per curiam)). And a suit against the members of such an institution "in their official capacities is the same as a suit against the [institution] itself." *Thomas*, 2018 WL 6613807, at *2.

        1.   Section 1983 Equal Protection – Sex Discrimination Claim Against the IHL and the Individually Named Defendants in Their Official Capacities

Mays Jackson previously "concede[d that] the Eleventh Amendment precludes her [Section] 1983 claim for money damages against IHL and the individually named defendants in their official capacities." Pl.'s Mem. in Opp'n [23] at 3. But she instead invokes the *Ex parte Young* exception to state sovereign immunity by including a Section 1983 claim against the IHL and the individually named defendants in their official capacities for "prospective relief of instatement to the position of President at JSU or a comparable position and compensatory damages." [31] ¶ 74a; *see also id.* ¶¶ 56–62; [48] at 3–4 (citing *Ex parte Young*, 209 U.S. 123 (1908)). The Court finds that the *Ex parte Young* exception is inapplicable, and state sovereign immunity bars Mays Jackson's Section 1983 claims against the

IHL and the individually named defendants in their official capacities. It dismisses these claims without prejudice.

In her [48] Response, Mays Jackson argues the *Ex parte Young* exception applies to her claims. [48] at 3–4. This exception "permits plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law. The officer sued must have *some* connection with the enforcement of the challenged act." *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671–72 (5th Cir. 2022) (cleaned up) (citing *Ex parte Young*, 209 U.S. at 155–57). Mays Jackson believes she suffered "sex discrimination and retaliation" when the "[i]ndividual [d]efendants voted to hire . . . males as President of JSU when she was clearly more qualified . . . ." [48] at 4. She claims that defendants' continuous denial to instate her as President of JSU "because of her sex" is an ongoing violation of law. *Id.*

First, Mays Jackson cannot maintain an *Ex parte Young* claim against the IHL. *See City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019). The IHL is a state agency. *See Thomas*, 2018 WL 6613807, at *2. A state agency is "not subject to the *Young* exception." *Paxton*, 943 F.3d at 1003. "[T]o fall within the *Ex parte Young* exception to sovereign immunity a plaintiff must name individual state officials as defendants in their official capacities." *Id.* at 1004. Thus, Mays Jackson's Section 1983 claim against the IHL fails.

Second, as for individually named defendants, the authority to name a new university president lies with the current IHL Board of Trustees.[10] The individually

---

[10] Presently, the Board includes Martin, Luckey, Donald Clark Jr., Cummings, Cunningham, Jerry L. Griffith, James H. Heidelberg, Hubbard, Ogletree, Parker, Rader,

named defendants do not hold the power to instate Mays Jackson to the position of JSU President. *See Fairley v. Stalder*, 294 F. App'x 805, 811–12 (5th Cir. 2008) (per curiam) (finding that the defendant was "not the proper party from whom to obtain relief from harms [the plaintiff] may have suffered," and therefore the defendant was "not in a position to provide the requested relief"). And "[w]here a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, [the] *Young* analysis ends." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022) (cleaned up); *see also* Miss. Code Ann. § 37-101-1.

Third, even if the individually named defendants had the power to instate Mays Jackson as JSU President, they argue that her "requested remedy of removing the current JSU President to instate her in his place, simply because she believes [she is] more qualified, is not feasible and, therefore, cannot serve as the basis for an application of *Ex parte Young . . . .*" Defs.' Reply [55] at 4. The Court agrees. Instatement is not feasible when "it would require the Court to bump an innocent person out of a job to accommodate Plaintiff." *Lopez v. City of Biloxi*, No. 1:03-CV-122, 2006 WL 839523, at *7 (S.D. Miss. Mar. 29, 2006). "Indeed, the Supreme Court has cautioned against the use of a remedy that 'bumps' one employee from a position in order to fill it with the victim of discrimination." *Walsdorf v. Bd. of Comm'rs for E. Jefferson Levee Dist.*, 857 F.2d 1047, 1054 (5th

---

and Charlie Stephenson. *The Board of Trustees*, Mississippi Institutions of Higher Learning, http://www.mississippi.edu/board/ (last visited Dec. 2, 2024). Only five of these current Board Members are named defendants.

Cir. 1988) (citing *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 579 (1983)).

The *Ex parte Young* exception does not apply to the IHL because it is a state agency. And it does not apply to the individually named defendants because the requested relief is not feasible, and those defendants lack power to grant Mays Jackson's requested relief. *Scott*, 28 F.4th at 671–72 (cleaned up). So the Eleventh Amendment bars Mays Jackson's Section 1983 claims against the IHL and the individually named defendants, in their official capacities. The Court dismisses the claims without prejudice under Rule 12(b)(1).

    2.  Title VII Retaliation Claim Against the Individually Named
        Defendants in Their Official Capacities

Under Title VII, only "employers" may be held liable. 42 U.S.C. §§ 2000e(b), 2000e-2(a)(1); *see Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (per curiam) ("[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee." (cleaned up)). And "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003).

Because Mays Jackson's Title VII retaliation claim is alleged against the individually named defendants, in their official capacities, and because the individually named defendants are not considered her employer, the individually

named defendants are not proper Title VII defendants. *See* [31] ¶¶ 67–68. This
claim is dismissed with prejudice.[11]

### 3.  First Amendment Retaliation Claim Against the Individually Named Defendants in Their Official Capacities

To establish a First Amendment retaliation claim, a claimant must show
that: "(1) she suffered an adverse employment action; (2) her speech involved a
matter of public concern; (3) her interest in commenting on matters of public
concern outweighs the employer's interest in promoting efficiency; and (4) her
speech motivated the employer's adverse action." *Modica v. Taylor*, 465 F.3d 174,
180 (5th Cir. 2006). Mays Jackson claims she was "denied . . . an interview for the
President's job because she engaged in protected activity" when she filed her EEOC
Charge in 2021. [31] ¶ 70. The IHL then hired a "male who was clearly less
qualified . . . ." *Id.* She believes she had a "clearly established right to speak out
about matters of public concern, including but not limited to sex discrimination in
public employment." *Id.* ¶ 71. She says the conduct of the individually named
Defendants was "objectively unreasonable," and because of such conduct, she has
and will continue to suffer damages. *Id.* ¶¶ 71–72.

Primarily, Defendants argue this claim fails because "[t]he First Amendment
of the Constitution may be urged against the state only through the vehicle of
Section 1983." Defs.' Mem. Supp'g Mot. [38] at 15 (citing *Bryant v. Miss. Mil. Dep't*,
519 F. Supp. 2d 622, 627 (S.D. Miss. 2007)). But this is incorrect. "[N]o heightened

---

[11] The Court notes that Mays Jackson concedes to the dismissal of her Title VII
retaliation claim against the individual defendants. [47] at 8–9; Defs.' Reply [54] at 6.

pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke [Section] 1983 expressly in order to state a claim." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (cleaned up). Even so, Mays Jackson does include that her claims are brought "by and through 42 U.S.C. § 1983," on the second page of her [31] Third Amended Complaint when establishing the jurisdiction of this Court. [31] ¶ 1.

Defendants next submit that the Eleventh Amendment provides immunity from this claim for the same reasons it provided immunity from the Section 1983 Equal Protection sex discrimination claim discussed above. *See* [38] at 15. Mays Jackson responds with an explanation of why the *Ex parte Young* exception to Eleventh Amendment immunity applies. *See* [48] at 3–4. And for the same reasons as discussed above, this argument fails. *See supra* Section III.A.1.

The *Ex parte Young* exception does not apply, and Eleventh Amendment sovereign immunity bars Mays Jackson's First Amendment retaliation claim against the IHL and the individually named defendants, in their official capacities. This claim is dismissed without prejudice. Mays Jackson does not explicitly allege this claim against the IHL. *See* [31] at 18–19. But if she had, the IHL would also be immune from this claim under the Eleventh Amendment. *Paxton*, 943 F.3d at 1003.

In all, the [37] Motion is granted, and all claims in it are dismissed.

B. [35] Motion to Dismiss and for Qualified Immunity by the Individually Named Defendants in Their Individual Capacities

    1. Section 1983 Equal Protection – Sex Discrimination Claim Against the Individually Named Defendants in Their Individual Capacities

Mays Jackson argues that the individually named defendants violated the Fourteenth Amendment's Equal Protection Clause by not promoting her because of her sex. *See* [47] at 10. To state a Section 1983 claim for sex discrimination in an employer's failure to promote, a plaintiff must show these elements: "(1) that she is a member of the protected class; (2) that she sought and was qualified for the position; (3) that she was rejected for the position; and (4) that the employer continued to seek or promote applicants with the plaintiff's qualifications." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) (cleaned up); *see also Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007). Mays Jackson need not submit evidence establishing a prima facie case of sex discrimination at this stage, but she must plead sufficient facts on each element to make her claim plausible. *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam).

Mays Jackson alleges she was a member of a protected class and was qualified to be JSU's President. [31] ¶ 57. She says that because Commissioner Rankins recommended that the IHL forego a national search, Hudson was named President, and she was not afforded the opportunity to apply. *Id.* And the individually named defendants knew or should have known that she was qualified and interested in that position. *Id.* She claims that in both November 2020 and

16

November 2023, the individually named defendants acted in an "objectively unreasonable" manner when they voted to name her male counterparts as President, even though she was "clearly more qualified." *Id.* ¶¶ 58–59, 61. In fact, Mays Jackson alleges the IHL has a "written policy that permitted it to hire individuals who did not apply for the position of President," and "[u]pon information and belief, to date, a female has never benefitted from IHL's policy." *Id.* ¶ 60. And this "written policy was the moving force behind IHL's violation of [her] right to be free from sex discrimination in public employment." *Id.*

In response, the individually named defendants, in their individual capacities, argue that their actions are protected behind the shield of qualified immunity. Defs.' Br. Supp'g Mot. [36] at 8–15. To rebut the individual defendants' qualified immunity defense, Mays Jackson must establish that they "(1) violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 347 (5th Cir. 2017) (cleaned up). The Fifth Circuit has found that "unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity." *Cope*, 3 F.4th at 204 (cleaned up). And "[b]road[,] general propositions are not enough to overcome qualified immunity." *Id.* at 205. At this stage, Mays Jackson's 2020 discrimination claim does not overcome qualified immunity, but her 2023 claim does.

a.  2020 Hiring of Hudson as JSU President

Mays Jackson fails to meet the first requirement for overcoming qualified immunity: stating a constitutional violation. She has not alleged a prima facie case of sex discrimination for the failure to promote her in 2020. Specifically, she has not alleged that she sought or applied for the position of JSU President.

Mays Jackson concedes that she did not apply for the President's role in 2020. *See* [47] at 10. But she argues that the position was never posted, and she was never given an opportunity to apply because the IHL's policy allowed it to "forego an extended search process and to offer the presidency to any person known to [it]." *Id.* (quoting IHL Position Statement [31-3] at 4–5). Mays Jackson claims that Rankins and IHL board members "knew or should have known" she was qualified for and interested in the position. *Jackson II* Compl., *supra*, ¶ 20; *see also* [36] at 10. And she claims the individual defendants had a "duty" to consider her, given her status as "the second highest ranking employee at JSU" and Bynum's occasional proxy. [47] at 11–12. She then includes that the individually named defendants failed to "ask [her] if she wished to be considered for the position." [47] at 12 (citing Feb. 2021 EEOC Charge [37-1]).

To be sure, when "an employer does not publish a vacancy *or* create a formal application process, a plaintiff need not prove that she applied for the position in order to make out a prima facie case of discrimination." *Everett v. Mississippi*, 106 F. App'x 264, 266 (5th Cir. 2004) (per curiam) (emphasis added). In such cases, "a plaintiff may satisfy her prima facie burden by proffering evidence that the

18

company had some reason or duty to consider her for the post." *Id.* (cleaned up). But the IHL publicly announced that it would conduct a national search for JSU's 12th president in February 2020. *See Jackson II* Compl., *supra*, ¶ 22. Hudson was not selected until November 2020, eight months later. *Id.* ¶¶ 25–26. During those eight months, Mays Jackson knew about the vacancy but does not allege that she ever voiced her interest in the position. *See id.* ¶¶ 19–26.

Mays Jackson cannot overcome qualified immunity "with mere conclusory statements evidencing only a personal belief that the defendants were motivated by an impermissible animus." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994). Rather, she must "plead specific facts with a level of particularity so that they would, if proved, warrant the relief she seeks." *Id.* Presently, she relies only on the presumption that her qualifications and desire for the role were universally understood and should have led the individually named defendants to promote her. She also fails to expand on how the individually named defendants' actions were "objectively unreasonable." [31] ¶¶ 60–61.

She has not alleged a prima facie case of sex discrimination in the defendants' failure to promote her. Thus, she has not shown a violation of her constitutional rights at the time Hudson was named JSU's President. Given the lack of particular facts showing that the individually named defendants knew about her interest and chose not to name her as JSU President in 2020 because of her sex, Mays Jackson has failed to overcome qualified immunity. This claim is dismissed

with prejudice.[12] *See, e.g.*, *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994); *see also Garcia v. City of Lubbock*, 487 F. Supp. 3d 555, 568 (N.D. Tex. 2020), *aff'd in part, rev'd in part on other grounds*, No. 21-11134, 2023 WL 4636896 (5th Cir. July 20, 2023).

    b.  2023 Hiring of Thompson as JSU President

On the other hand, Mays Jackson overcomes qualified immunity—at this early stage—regarding her sex discrimination claim stemming from Thompson's hiring as JSU President in 2023.

In rebutting the qualified immunity defense regarding Thompson's hiring as JSU's 13th President, Mays Jackson writes a singular sentence echoing her argument about the 2020 hiring of Hudson. She writes: "Similarly, for the reasons stated above, this Court should deny the individual defendants and Rankins' Motion to Dismiss her sex discrimination claim as it relates to the selection of Thompson." [47] at 13. In response, the individually named defendants argue that this Court should deny this claim because of Mays Jackson's abandonment of it. [54] at 8. And although the Fifth Circuit has found that "a party who inadequately briefs an issue is considered to have abandoned the claim," *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 585 (5th Cir. 2021) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)), this Court will examine it without exception.

---

[12] Any alleged discrimination that occurred before November 16, 2020—including the naming of Hudson to Interim President in February 2020—is barred by the applicable statute of limitations period of three years. *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016); *see also* Miss. Code. Ann. § 15-1-49(1).

Mays Jackson has plausibly alleged that, in 2023, she was a qualified female who applied for the position of JSU President, and she was rejected when Thompson—a similarly situated male—was promoted to the position. [31] ¶¶ 47–51, 55. These facts allege a prima facie case of sex discrimination for failure to promote against the individually named defendants who voted to instate Thompson as JSU President in 2023. *See Lindsley*, 984 F.3d at 469; [31] ¶ 59.[13]

Mays Jackson alleges detailed facts about her wealth of collegiate and administrative experience. *See* [31] ¶¶ 24–33. She also argues that because "Thompson had no tangible day-to-day experience leading a division within a university," her own "experience and qualification . . . surpassed [his]." [31] ¶¶ 50–51. But "work experience is *one* component of defining who is more qualified." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (cleaned up) (emphasis added). And Thompson had experience as "chief of staff, deputy commissioner, and chief administrative officer for [the] IHL." [31] ¶ 50. Even so, taking all of Mays Jackson's allegations as true and construing all inferences in her favor, she plausibly alleges, at least, that both she and Thompson were similarly situated. *Id.* ¶¶ 24–33, 50. They both could have met the list of "desired characteristics and qualifications" that the individually named defendants were looking for in JSU's next president. *Id.* ¶ 47.

---

[13] Mays Jackson does not allege that McNair, Hooper, Dye, or Rankins played any role in failing to promote her in 2023. [31] ¶¶ 59, 62. Insofar as Mays Jackson brings a sex-discrimination claim against these defendants for failure to promote in 2023, the Court dismisses it with prejudice.

Since Mays Jackson has alleged a plausible prima facie case that her right to be free of sex discrimination was violated, the Court considers whether that right was clearly established then. *See Brinsdon*, 863 F.3d at 347. "[F]ailure to promote an employee based on their membership in a protected class was constitutionally proscribed at the time of the purported misconduct." *Mackey*, 2023 WL 7663300, at *7 (cleaned up). Thus, the Court denies Cunningham, Duff, Luckey, Martin, Morgan, Ogletree, Starr, and Parker qualified immunity at this stage. Mays Jackson's allegations plausibly raise the inference of sex discrimination, so Defendants "must proffer a legitimate, non-discriminatory reason for" not promoting Mays Jackson. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). And they must do it "through the introduction of admissible evidence . . . ." *Id.* (cleaned up). These matters are appropriate for summary judgment, not a motion to dismiss. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019). This claim survives.

2. Title VII Sex Discrimination Claim Against the Individually Named Defendants in Their Individual Capacities

Mays Jackson does not explicitly allege this claim against the individually named defendants. *See* [31] at 17. But if she had, "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel*, 339 F.3d at 381 n.1. And so this claim is dismissed with prejudice.

3. Title VII Retaliation Claim Against the Individually Named
   Defendants in Their Individual Capacities

Mays Jackson concedes to the dismissal of her Title VII retaliation claim

against the individually named defendants, in their individual capacities. *See* [47]

at 8–9; [54] at 6. The Court dismisses this claim with prejudice.

4. First Amendment Retaliation Claim Against the Individually Named
   Defendants in Their Individual Capacities

To establish a First Amendment retaliation claim, a claimant must show

that: "(1) she suffered an adverse employment action; (2) her speech involved a

matter of public concern; (3) her interest in commenting on matters of public

concern outweighs the employer's interest in promoting efficiency; and (4) her

speech motivated the employer's adverse action." *Modica*, 465 F.3d at 179–80. Mays

Jackson claims she was "denied . . . an interview for the President's job because she

engaged in protected activity" when she filed her EEOC Charge in 2021. [31] ¶ 70.

Then, the IHL allegedly hired a "male who was clearly less qualified." *Id.* Mays

Jackson believes she had a "clearly established right to speak out about matters of

public concern, including but not limited to sex discrimination in public

employment." *Id.* ¶ 71. And she says the conduct of the individually named

defendants was "objectively unreasonable," and because of such conduct, she has

and will continue to suffer damages. *Id.* ¶¶ 71–72.

Arguing this claim is facially deficient, Defendants write that "Mays Jackson

does not plead her First Amendment claim through Section 1983, and, for this

23

reason alone, the claim should be dismissed." [36] at 6. But this is incorrect. *See Johnson*, 574 U.S. at 11; *see also supra* note 15.

Defendants next submit that "the filing of an EEOC discrimination complaint without further airing of grievances 'implicates only the private employment interests of the plaintiff and is not a matter of public concern.'" [36] at 6 (citing *Cutrer v. McMillan*, 308 F. App'x 819, 822 (5th Cir. 2009) (per curiam)). The further airing of grievances requires an attempt to air one's complaints "in a manner that would call the public's attention to the alleged wrong." *Ayoub v. Tex. A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991).

Mays Jackson responds by citing to her written response to the Position Statement from the IHL. [47] at 7 (citing Resp. to Position Statement [47-1]). She argues:

> [H]er Rebuttal to IHL's position statement was not made possible only because of information she learned at work and she spoke to an external agency—not up the chain-of-command and/or to her peers, [so] this Court should find that [her] speech was protected by the First Amendment like any other Mississippian who criticized IHL's process of selecting [i]nstitutional [e]xecutive [o]fficers.

*Id.* at 8.

To prevail on a First Amendment retaliation claim, an individual must air their grievances as a citizen on a matter of public concern, not as an employee on a matter of personal interest. *See Ayoub*, 927 F.2d at 837. And whether speech is considered a matter of public concern is a question of law. *Id.* at 836. In the context of filing her EEOC Charge, Mays Jackson only spoke out against alleged retaliatory acts toward *her*. *See* [37-1]. Her Charge focused on her interactions with Bynum,

Hudson, and Rankin, her educational background and work experience, her feelings of shock and disappointment when Hudson was appointed as President, and her belief that she was discriminated against. *Id.* at 2–4. Mays Jackson only mentions someone other than herself or the individually named defendants when she included that she "(and others) were interested in applying for the position of President and awaited the job posting." *Id.* at 4. Mays Jackson's complaints solely focused on her individual belief that she was "more qualified" than her male counterparts. *Id.* at 3–4; *see also Jackson II* Compl., *supra*, ¶¶ 27–28, 34. And according to the facts, she did not take this personal grievance into the public eye.

In its simplest form, "[l]odging a complaint with the EEOC, without further airing of grievances, creates a private, personal dispute between employer and employee. It does not create a generalized petition for a remedy to a public problem." *Short v. City of W. Point*, 125 F.3d 853, 1997 WL 575048, at *1 (5th Cir. 1997) (per curiam) (cleaned up). Because this type of speech is not protected by the First Amendment since it "concerns merely personal employment status," this claim is dismissed with prejudice. *Id.*

In all, the [35] Motion is granted in part and denied in part. All claims in it are dismissed, except Mays Jackson's 2023 Section 1983 sex discrimination claim against Cunningham, Duff, Luckey, Martin, Morgan, Ogletree, Starr, and Parker.[14]

---

[14] Mays Jackson repeatedly requests that "[i]f this Court finds that [her] pleadings are lacking . . . , this Court should allow [her] to amend her pleadings to overcome any deficiency . . . ." [47] at 8; *see also id.* at 13; [48] at 8. The original [1] Complaint has already been amended three times. In the interest of judicial efficiency, and considering the three previous opportunities to cure any deficiencies, the Court denies this request. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a

C. *Jackson II* [7] Motion to Dismiss

The Court grants Defendant IHL's Motion to Dismiss filed in *Jackson II*. *Jackson II* Mot. Dismiss, *supra*. Mays Jackson's complaint in *Jackson II* alleges two claims against the IHL: Title VII sex discrimination and Title VII retaliation. *Jackson II* Compl., *supra*, ¶¶ 40–45. Jackson already alleges the same Title VII sex discrimination claim against the IHL in *Jackson I*, so the Court dismisses the *Jackson II* sex-discrimination claim as duplicative. *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) ("When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed." (emphasis omitted)); *see also, e.g., Townsel v. Williams*, No. 1:22-CV-59, 2022 WL 1110333, at *1 (S.D. Miss. Apr. 13, 2022).

As for the new Title VII retaliation claim in *Jackson II*, Mays Jackson failed to address the IHL's arguments for dismissing that claim. Response to Motion to Dismiss at 3–4, *Jackson II*, No. 3:24-CV-308, ECF No. 15. "A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins.*, 22 F.4th 450, 459 (5th Cir. 2022). Thus, the Court dismisses the Title VII retaliation claim without prejudice as abandoned.

In all, the *Jackson II* [7] Motion to Dismiss is granted, and all claims in it are dismissed.

---

plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

IV.     Conclusion

The Court has considered all the arguments the parties set forth. Those

arguments not addressed would not have changed the outcome of the Court's

decision. For these reasons, the Court GRANTS IN PART and DENIES IN PART

Defendants' [35] Motion, GRANTS Defendants' [37] Motion, and GRANTS the IHL's

[7] Motion to Dismiss in *Jackson II*.

- The Section 1983 Equal Protection sex discrimination claims are DISMISSED WITHOUT PREJUDICE as to the IHL and all the individually named defendants in their official capacities.

- The Title VII retaliation claims are DISMISSED WITH PREJUDICE as to all the individually named defendants in their official and individual capacities.

- The First Amendment retaliation claims are DISMISSED WITHOUT PREJUDICE as to the IHL and all the individually named defendants in their official capacities.

- The 2020 Section 1983 Equal Protection sex discrimination claim is DISMISSED WITH PREJUDICE as to all the individually named defendants in their individual capacities.

- The 2023 Section 1983 Equal Protection sex discrimination claim is DISMISSED WITH PREJUDICE as to Defendants McNair, Hooper, Dye, and Rankins in their individual capacities.

- The Title VII sex discrimination claim is DISMISSED WITH PREJUDICE as to all the individually named defendants in their individual capacities.

- The First Amendment retaliation claims are DISMISSED WITH PREJUDICE as to all the individually named defendants in their individual capacities.

- The Title VII sex discrimination and retaliation claims filed in *Jackson II* are DISMISSED WITHOUT PREJUDICE as the IHL.

- The 2023 Section 1983 Equal Protection sex discrimination claim as to Defendants Cunningham, Duff, Luckey, Martin, Morgan, Ogletree, Starr, and Parker, in their individual capacities, will proceed past this motion to dismiss phase.

27

- The Title VII sex discrimination claim as to the IHL will also proceed past this motion to dismiss phase. *See* [37] at ¶ 2.

SO ORDERED AND ADJUDGED, this 6th day of January, 2025.


s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE